458 A.2d 219

**COMMONWEALTH of Pennsylvania, Appellant**

**v.**

**Louis McCLOUD.**

Superior Court of Pennsylvania.

Submitted Oct. 27, 1982.

Filed March 18, 1983.

Petition for Allowance of Appeal Denied Aug. 1, 1983.

30

Gaele M. Barthold, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Ronald Allan Smith, Philadelphia, for appellee.

Before HESTER, WICKERSHAM and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal by the Commonwealth from an Order granting a new trial to appellee, Louis McCloud. Appellee was arrested on February 10, 1947, and charged with twenty-four (24) robberies and two (2) auto thefts. Appellee pleaded guilty to two (2) armed robberies and was sentenced to a term of fifteen (15) to thirty-five (35) years imprisonment. Mr. McCloud filed no post-verdict motions and did not take a direct appeal from judgment of sentence. On June 27, 1979, thirty-two (32) years after having been sentenced[1], Mr. McCloud filed a *pro se* writ of habeas corpus. Subsequently, court-appointed counsel filed an amended P.C.H.A.[2] petition alleging, *inter alia*, that appellee's trial counsel was constitutionally ineffective in failing to attempt to suppress an involuntary confession, in failing to inform appellee of his right to appeal and his right to

[1]. The record shows that appellee had been paroled but had been recommitted after several parole violations. (N.T. p. 74).

[2]. Post Conviction Hearing Act, Act of January 25, 1966 P.L. 1580 (1965), § 1 *et seq.*, 19 P.S. § 1180–1 *et seq.*, *repealed,* Act of April 28, 1978, P.L. 202, No. 53, § 2(a) (1397) effective June 27, 1980, *as amended* by Act of June 26, 1980, P.L. 265, No. 77, § 2 delaying repeal until June 27, 1981, *as further amended* by the Act of June 26, 1981, P.L. 123, No. 41, § 1 delaying repeal until June 26, 1982, *repealed* by Act of May 13, 1982, P.L. 587, No. 1982–122, § 3, *replaced* by 42 Pa.C.S.A. § 9541 *et seq.*

free counsel on appeal, and for representing both appellee and a co-defendant thus creating a conflict of interest.

The court below conducted hearings on the amended P.C.H.A. petition, and heard the testimony of appellee, his trial counsel, and trial counsel for a co-defendant who had pleaded not-guilty. At the conclusion of testimony and argument, the P.C.H.A. court granted Mr. McCloud's petition for relief and ordered a new trial.

The Commonwealth has filed this appeal from the lower court's order, alleging that by pleading guilty appellee waived his right to attack his sentence collaterally on the grounds that his confession was involuntary, and that, because of his thirty-two (32) year delay in seeking relief and his admission of guilt while testifying at the trial of a co-defendant, appellee should be barred from relief by the equitable doctrine of laches.

We find merit in the Commonwealth's first contention and, accordingly, reverse the lower court's grant of post conviction relief. Because of our disposition of this appeal, we do not reach the Commonwealth's second contention of error.[3]

The prosecution contends that the PCHA court granted appellee relief on a waived claim "despite [appellee's] waiver of the confession issue when he pled guilty in 1947." Brief for Appellant at 7. In examining whether a defendant may collaterally attack his guilty plea, we have said the following:

"Upon entry of a plea of guilty, all grounds of appeal are waived other than challenges to the voluntariness of the plea and the jurisdiction of the sentencing court." *Commonwealth v. Greer*, 457 Pa. 646, 326 A.2d 338 (1974).

---

**3.** Although we dispose of this case on other grounds, a recent decision by our Supreme Court, per Justice Larsen, *Commonwealth v. Alexander*, 495 Pa. 26, 432 A.2d 182 (1981), would appear to support appellant's contention that appellee has waited too long in seeking relief. Justice Larsen sets forth various factors to be considered by the PCHA court, including the length of time between the occurrence of the asserted error and the filing of the petition, and the explanation for any delay. *Alexander, supra,* 495 Pa. at 34–35, 432 A.2d at 186.

*Accord Commonwealth v. Chumley,* 482 Pa. 626, 639–40, 394 A.2d 497, 504 (1978), *cert. denied* 440 U.S. 966, 99 S.Ct. 1515, 59 L.Ed.2d 781 (1979).

Under 42 Pa.C.S.A. § 9544(b) of the Post Conviction Hearing Act, an issue is waived if:

"(1) the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted or in a prior proceeding actually initiated under this subchapter.

(2) the petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue."

Section 9544(c) provides:

"There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure."

■ In the instant case, the only issue properly preserved is whether counsel is ineffective for failing to inform appellee of his right to a direct appeal and of his right to free counsel for purposes of effectuating the appeal. This issue is not waived because an allegation of counsel's ineffectiveness in failing to appeal a ruling constitutes an extraordinary circumstance. *See Commonwealth v. LaSane,* 479 Pa. 629, 389 A.2d 48 (1978).

The other issues appellee raises concern whether his trial counsel was ineffective for failing to suppress an involuntary confession and for representing both appellee and a co-defendant thus creating a conflict of interest. However,

"Appellant's claims of ineffectiveness must be evaluated *in the context* of his guilty plea.... Thus allegations of ineffective assistance of counsel in connection with entry of the guilty plea will serve as a basis for relief *only if the ineffectiveness caused appellant to enter an involuntary or unknowing plea. See Commonwealth v. Jones,* 477 Pa. 266, 383 A.2d 926 (1978); *Commonwealth*

*v. Bunch,* 466 Pa. 22, 351 A.2d 284 (1976)." (Emphasis added) *Commonwealth v. Chumley, supra,* 482 Pa. at 639–41, 394 A.2d at 504–5.

■  In the case before us, appellee has failed to allege that his counsel incompetently caused him to enter an "involuntary or unknowing plea," *id.,* thus, the issues concerning the illegal confession and conflict of interest are waived.

However, because of the serious and unusual circumstances presented by this case, and because the PCHA court has completed the record for appellate review, we address the merits of these waived claims. To do otherwise would not be in the interest of judicial economy since it is clear from the record that a subsequent PCHA petition alleging the ineffectiveness of PCHA counsel below would be fruitless.

In the proceedings held below, the PCHA court conducted extensive evidentiary hearings and granted appellee relief. The court did not address the waiver issue below but instead held that:

"The testimony offered at petitioner's hearing establishes convincingly that the violations of his constitutional right to due process under the Fourteenth Amendment by the police in eliciting his statement were so aggregious [sic] as to negate the voluntariness of that statement. As we have noted earlier, petitioner's decision to plead guilty to the charges was based in part on the existence of this statement. This basic violation of petitioner's right to due process warrants granting a new trial." Lower Court Opinion at 5.

■  Our Supreme Court has reiterated the current state of the law on this issue:

"[I]n order successfully to attack a guilty plea in a P.C.H.A. proceeding on the ground that it was the product of an involuntary pre-trial confession, one must demonstrate *all* of the following: '(1) an involuntary pre-trial confession . . .; (2) that the guilty plea was primarily

motivated by [the confession]; and, (3) that [appellant] was incompetently advised by counsel to plead guilty, in the circumstances, rather than stand trial.' *Commonwealth v. Marsh,* 440 Pa. 590, 593, 271 A.2d 481, 483 (1970)" (emphasis in original) *Commonwealth v. Miller,* 494 Pa. 229, 236–37, 431 A.2d 233, 236. *See also, Commonwealth v. Garrett,* 425 Pa. 594, 229 A.2d 922 (1967).

Thus, it is clear that a collateral attack of a guilty plea must fail if *less* than all three of the above criteria are met. *See Commonwealth v. Williams,* 485 Pa. 137, 140–41, 401 A.2d 331, 333 (1979) ("appellant's guilty plea was not primarily motivated by his confession."); *Commonwealth v. Miller, supra* 494 Pa. at 236–37, 431 A.2d at 236 (1979) ("even assuming *arguendo* that appellant's confession was involuntary, he never attempted to prove at the PCHA hearing that his guilty plea was primarily motivated by the allegedly involuntary confession.... [also] the record adequately reflects that counsel's decision [, a recommendation that appellant plead guilty,] was made in an attempt to avoid appellant's likely conviction of first degree murder and a sentence of death or life imprisonment."); *Commonwealth v. Maute,* 263 Pa.Super. 220, 397 A.2d 826 (1979) ("Because we conclude appellant has not shown that his confession was in fact involuntary, we do not decide whether the remaining criteria have been satisfied."); *Commonwealth v. Farrington,* 270 Pa.Super. 400, 405–06, 411 A.2d 780, 782 (1979) ("For the foregoing reasons appellant has failed to prove all three requisites to successfully collaterally attack his guilty pleas.")

The PCHA court found that the testimony offered was sufficient to establish that appellee's signed confession was the product of beatings by the police. A thorough review of the record clearly supports this finding. Thus, the first of the three requirements to a successful guilty plea attack has been satisfied.

Our next consideration is whether the involuntary confession was the primary motivation behind the guilty plea. The reason that a defendant launching a successful collater-

al attack on a guilty plea, in addition to proving that his confession was involuntary, must prove also that the guilty plea was motivated primarily by the confession and that the defendant was advised incompetently by counsel to enter a plea of guilty has been stated in the following manner:

"Conviction after a guilty plea is based not on evidence in the hands of the Commonwealth, including a pre-trial confession, but rather on a defendant's admission in open court that he committed the crime. The existence of an involuntary confession does not, in itself, prove that a defendant did not have the opportunity to make a reasonable choice, and thus it cannot, in itself, establish that the plea was not intelligently and knowingly entered."
*Commonwealth v. Miller, supra* 494 Pa. at 236–37, 431 A.2d at 236.

Appellee testified that he pleaded guilty for a number of reasons: (1) his attorney told him that the judge would be lenient toward him since he had never been convicted before (N.T. p. 78); (2) the detectives, after beating him and holding him incommunicado for eight days, said they would "give him a hand," (N.T. p. 67); and (3) because "I was beaten and scared and frightened." (N.T. p. 68) It is apparent from this testimony that appellee pleaded guilty because he was beaten and, also, because his attorney advised him that a guilty plea would mean a more lenient sentence.

The court below did not go so far as to say that the primary motivation behind appellee's guilty plea was the beating and subsequent involuntary confession. The PCHA court granted relief because "[P]etitioner's decision to plead guilty to the charges was based *in part* on the existence of this [involuntary] statement." (emphasis added) Lower Court Opinion at 5. It is clear that the court erred by granting relief on the basis of this "in part" standard. However, it is also obvious from the record that appellee did not prove any more than what the PCHA court found, that the guilty plea was motivated *in part* by the involuntary confession.

In *Commonwealth v. Garrett, supra,* our Supreme Court discussed the primary motivation issue:

"The mere existence of an involuntary confession, however, is not sufficient to invalidate a guilty plea for the petitioner would still have to prove that the involuntary confession was the primary motivation for his plea of guilty. *Brown v. Turner,* 257 F.Supp. 734, 738 (E.D.N.C. 1966); *see Gilmore v. People of State of California,* 361 F.2d 916 (9th Cir.1966). When a defendant enters a guilty plea, the Commonwealth in justified reliance upon that plea frequently does not preserve all the evidence it has assembled against the defendant. Thus a contrary rule would encourage an obviously guilty defendant to enter a plea in the hope that it could be set aside as coerced, at a later time when the evidence against him would have disappeared and witnesses to the crime will be unavailable.

There are, moreover, many reasons, other than the existence of the confession, which may influence the defendant's decision to plead. For example, he may view it as a first step towards his rehabilitation, he may believe the Commonwealth has sufficient evidence to convict him without the confession, he may wish to avoid the glare of publicity of a jury trial and save his family from the resulting embarrassment, or he may simply hope for a more lenient sentence."

*Commonwealth v. Garrett, supra* 425 Pa. at 597–599, 229 A.2d at 925.

The Commonwealth argues that appellee has coyly waited through repeated incarcerations and parole violations until the Commonwealth could not again prove his guilt. Brief for Appellant at 13. In the proceedings below, the Commonwealth showed that its witnesses in the case are dead, otherwise unavailable, or simply cannot be identified because its file and the court's records are no longer in existence. (N.T. pp. 11–12, 63–64, 70, 103–104). This Court, in reviewing the trial of one of appellee's co-defendants, William Roberts, stated that "when testimony was being

taken on the pleas of guilty of the other defendants, they again exonerated the appellant." *Commonwealth v. Roberts*, 161 Pa.Super. 548, 55 A.2d 577, 579 (1947). Although such testimony would undoubtedly shed light on the issues before us, it is now missing from the record. Because most of the record in this case no longer exists, it is not possible to ascertain if appellee pleaded guilty primarily because of the involuntary confession or because the evidence, even without the confession, was sufficient to convict him, or because he simply hoped for a more lenient sentence.

Appellee testified that his counsel told him that the Commonwealth had "a lot of evidence" against him. (N.T. p. 31). However, counsel testified that the fact that a statement had been made, even though involuntary, would have been a factor behind advising a guilty plea since most involuntary confessions were not suppressed in 1947. (N.T. p. 87). How important this confession was to the Commonwealth's case is unknown.

Subsequent to entering his guilty plea, appellee testified at the trial of William Roberts. Although called as a Commonwealth witness, appellee, after admitting having pleaded guilty to a number of robbery charges, when asked if Mr. Roberts acted with him in the holdup of a second hand automobile place, stated that he (appellee) had taken part in the robbery but that Mr. Roberts had not been involved. (N.T. Trial of William Roberts, April 23 & 24, 1947, pp. 23, 24). A subsequent admission in court to involvement in a crime to which one had earlier pleaded guilty might be considered as evidence that the earlier guilty plea was not primarily motivated by an involuntary confession. However, in this case, the robberies to which appellee pleaded guilty do not coincide with any crime subsequently admitted to during the *Roberts* trial.

■ The burden of proof in a PCHA hearing is on the petitioner. *Commonwealth v. Conley*, 243 Pa.Super. 295, 298, 365 A.2d 858, 860 (1976). In this case, it appears that several factors motivated appellee to plead guilty. The conclusion drawn by the PCHA court that appellee's deci-

sion to plead guilty was based "in part" on the involuntary confession is the only possible conclusion to be derived from the facts. Although we are appalled at the circumstances surrounding appellee's arrest, we are constrained by well settled law. Appellee knew that a plea of guilty would probably get him a more lenient sentence. He also knew that a major piece of evidence against him was the confession. Even if, due to criminal procedures in 1947, the involuntary statement could not have been suppressed, appellee may have pleaded guilty primarily because he knew he was guilty and wanted to pay his debt to society by serving a lenient sentence. Moreover, appellee does not assert his innocence on this appeal.

However, even if we assume that appellee could prove that his primary motivation in pleading guilty was the involuntary confession, we could not find that appellee was incompetently advised by counsel to plead guilty, in the circumstances, rather than stand trial. Appellee argues that his trial counsel was ineffective for failing, pre-trial or post-trial, to suppress appellee's confession or bring it to the attention of a jury or have it reviewed by an appellate court.

"[B]efore a claim of ineffectiveness can be sustained, it must be determined that, in light of all the alternatives available to counsel, the strategy *actually* employed was so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Hill*, 427 Pa. 614, 617, 235 A.2d 347, 349 (1967). Appellee's trial counsel testified that he had no personal recollection of representing appellee, apparently because of the 34 year time lapse. However, counsel testified that his practice was not to allow a defendant to plead guilty "unless he admitted to me facts which would constitute the crime with which he was charged." (N.T. p. 84). Further, counsel testified that in 1947 there were no motions to suppress, and in most cases the confession would be submitted to the jury, subject only to what evidence could be shown regarding its involuntary nature. (N.T. p. 86).

Although appellee's co-defendant, William Roberts, stood trial and had his conviction reversed by this court on direct

appeal, *Commonwealth v. Roberts, supra,* albeit not on the grounds of an involuntary confession, the determination of counsel's effectiveness is in no way dependent upon this defendant's satisfaction with the result. *Commonwealth v. Garrett, supra* 425 Pa. at 601–03, 229 A.2d at 927. Mr. Roberts' attorney, Louis Lipschitz, testified that he had attempted to have an involuntary confession (which had been prepared by appellee for Mr. Roberts' signature) suppressed before Mr. Roberts' first trial. The judge did not suppress it even though Mr. Roberts' testimony as to severe beatings by the police was corroborated by a prison physician and the physician's associate. According to the factual accounting recorded in *Commonwealth v. Roberts,* the trial judge stated that "Except for defendant's own testimony, there was no evidence that he had suffered any physical abuse until after he had joined in making and signing the statement or confession." Further, the trial judge offered that the injuries for which Mr. Roberts was treated at the county prison may have been received "at the hands of one or more of the other defendants." *Commonwealth v. Roberts, supra* 161 Pa.Super. at 552–54, 55 A.2d at 579. This Court, in ordering a new trial, could not account for the above statements of the trial judge, finding his suggestions "highly improbable" in view of the fact that the defendants were confined in separate police stations until after the police officers had completed their investigation. Nevertheless, this Court agreed "that defendant's evidence on the subject was not so clear or convincing as to warrant the exclusion of the confession from the jury." *Id.* Therefore, despite pretrial review (at the preliminary hearing Mr. Lipschitz attempted to pull the clothes off of his client in order to show the court his bruises) and review by the Superior Court after trial, Mr. Roberts' confession, which was elicited in the very same manner as appellee's confession, could not be suppressed and was presented to the jury. This scenerio clearly corroborates the testimony of appellee's trial counsel concerning the law on suppression motions in 1947. It was not until Mr. Roberts' second trial that Mr. Lipschitz found a newspaper photograph, which,

when enlarged, depicted the defendants' bruises and impeached the testimony of a police detective who had interrogated Mr. Roberts.  Although Mr. Roberts was acquitted after his second trial, the determination of the effectiveness of appellee's trial counsel is in no way dependent upon the result in a co-defendant's case.  "The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record.  Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis." *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352–53 (1967).  Here, in light of the fact that appellee apparently had no prior convictions, and that his confession, even though involuntary, would probably have gone to a jury and very possibly led to a conviction, we find that counsel's recommendation to plead guilty had some reasonable basis designed to effectuate his client's interests.  To consider the fact that appellee received a very stiff sentence would improperly require the use of hindsight evaluation.

▮  As the PCHA court correctly noted, the allegations of numerous violations of appellee's rights concern occurrences that substantially predate the landmark United States Supreme Court decisions defining what those rights entail.  Presented with the issue of whether a valid guilty plea may be impeached in collateral proceedings by assertions that the plea was motivated by a prior coerced confession, the United States Supreme Court held that:

> "It is no denigration of the right to trial to hold that when the defendant waives his state court remedies and admits his guilt, he does so under the law then existing; further, he assumes the risk or ordinary error in either his or his attorney's assessment of the law and facts.  Although he might have pleaded differently had later decided cases then been the law, he is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act."

*McMann v. Richardson,* 397 U.S. 759, 774, 90 S.Ct. 1441, 1450, 25 L.Ed.2d 763 (1970).

In *Commonwealth v. Miller, supra,* our Supreme Court stated, "We have held repeatedly that counsel's stewardship must be judged in light of the available alternatives in that he cannot be expected to raise motions unsupported by existing law. *Commonwealth v. Roach,* 479 Pa. 528, 388 A.2d 1056 (1978); *Commonwealth v. Logan, supra; Commonwealth v. Alvorado,* 442 Pa. 516, 276 A.2d 526 (1971)." *Commonwealth v. Miller, supra* 494 Pa. at 234, 431 A.2d at 235. We hold that counsel was not ineffective in advising appellee to enter a plea of guilty.

Appellee's remaining contentions of ineffectiveness of counsel are that he was not informed of his appellate rights and that counsel created a conflict of interest by representing appellee and a co-defendant [4]. Although it did not base its award of a new trial on these grounds, the P.C.H.A. court found that appellee's counsel had represented several of appellee's co-defendants, that this was a common practice at the time, as was the failure to advise defendants of their appellate rights.

Appellee's conflict of interest argument is not supported by the law of this Commonwealth. "[A] defendant must demonstrate that a conflict of interest actually existed at trial, because 'dual representation alone does *not* amount to a conflict of interest.' ... [A]ppellant will satisfy the requirement of demonstrating possible harm, if he can show, inter alia, 'that he had a defense inconsistent with that advanced by the other client, or that counsel neglected his case in order to give the other client a more spirited defense.' " (Citations omitted) (Emphasis in original) *Commonwealth v. Breaker,* 456 Pa. 341, 345, 318 A.2d 354, 356 (1974).

██ Here, appellee and the other co-defendants represented by appellee's counsel all pleaded guilty. Appellee argues

---

4. As was stated previously, William Roberts pleaded not guilty and was represented by Attorney Louis Lipschitz. Appellee had different counsel and pleaded guilty along with two other co-defendants.

only that, "Such multiple representation clearly tainted the proceedings and eliminated any possibility of acquittal when counsel advised the appellee and co-defendants to enter a guilty plea." Brief for appellee at 11. This assertion does not reach the issue of whether, because of his multiple representation, counsel neglected appellee's case. Appellee's argument clearly has no merit.

■ The PCHA court found that counsel's failure to advise appellee of his appellate rights was consistent with common practice in 1947. Furthermore, because he pleaded guilty, the only issues appellee could have contested on appeal would be the jurisdiction of the trial court, the validity of his plea, and the lawfulness of his sentence. *See Commonwealth v. Skurkis,* 465 Pa. 257, 348 A.2d 894 (1975). Appellee had the opportunity to raise these issues in post-conviction proceedings. The same legal standards were applicable to the post-conviction proceedings as would apply on appeal. Since we have determined that appellee's post-conviction petition is meritless, to remand for an appeal *nunc pro tunc* is not appropriate. *See Commonwealth v. Alston,* 473 Pa. 40, 373 A.2d 741, 744 (1977).

For the above reasons, we reverse the order of the lower court granting appellee a new trial, and deny appellee's PCHA petition.